**James A. Bingham, Appellant, v. Bell & Zoller Coal Company et al., Appellees.**

**Gen. No. 16,668.**

1. INSOLVENCY—*corporation.* Where a corporation is unable to pay its debts as they fall due in the usual course of business, it is in law insolvent.

2. CORPORATIONS—*when loan by director to corporation is void.* Where the directors of an insolvent corporation issue bonds secured by a mortgage on the corporate property, for a loan furnished by one of the directors and another stockholder, owners of a competing corporation, who control the board of directors, so that a large part of the money loaned is paid on the obligations due their company, such mortgages and bonds are void in equity at the instance of a minority stockholder who did not consent to any of the proceedings.

3. CORPORATIONS—*placing parties in statu quo.* Where the directors of an insolvent corporation enter into an unfair and fraudulent contract for a loan from one who is a .director, an innocent stockholder, to maintain an action in equity to set aside the transaction, need not offer to place such party *in statu quo.*

4. CORPORATIONS—*majority of stockholders cannot ratify fraudulent contract.* Where the directors of a corporation enter into a contract with the corporation which is fraudulent and unjust and is voidable at the instance of an innocent stockholder, a ratification by a majority of the stockholders does not preclude a court of equity from setting the contract aside.

Appeal from the Superior Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Reversed and remanded with directions. Opinion filed October 16, 1912. Rehearing denied December 4, 1912.

STEERE, WILLIAMS & STEERE and EDWIN WHITE MOORE, for appellant.

RYAN & CONDON, for appellees; IRWIN I. LIVINGSTON, of counsel.

MR. JUSTICE BAUME delivered the opinion of the court.

In 1907 the Standard Washed Coal Company, hereinafter called the Standard Company, a corporation, was engaged in operating coal mines in or near Springfield, Illinois, and in the wholesale merchandising of coal in the City of Chicago. In March of the same year Herbert E. Bell and Walter G. Zoller, who then owned all the stock in the Bell & Zoller Coal Company, a competing corporation, acquired 252 shares of the capital stock of the Standard Company. On January 1, 1908, the Standard Company had become financially embarrassed and was unable to pay its debts as they fell due in the usual course of business, although the inventoried value of its assets more than equaled its liabilities. It then owed on accounts due and payable $47,680.52, including an item of about $5,000 due the Bell & Zoller Coal Company; on bills due and payable $40,024.29, $22,000 of which was owing to the Bell & Zoller Coal Company; on notes and bonds not then due $78,500. It then had cash on hand amounting to $443.33. Its trial balance on January 31, 1908, showed accounts and bills then payable amounting to

$77,856.51, including substantially the same amounts above stated as due to the Bell & Zoller Coal Company. The cash then on hand was $2,768.69. In 1907, the business of the company was operated at a net loss of $662.44, and the net loss for January, 1908, was $457.00.

On January 30, 1908, the capital stock of the Standard Company, consisting of 1350 shares of the par value of $100 per share, was held as follows: James A. Bingham, 233 shares, W. T. Delihant, 233 shares, Michael C. O'Donnell, 244 shares, Herbert E. Bell, 124 shares, Walter G. Zoller, 125 shares, Edward W. McCulloch, 233 shares, Wm. Siebert, 126 shares, George W. Ford, 25 shares, Albert Tebo, 4 shares, and Ransom D. Rundell, Wm. W. Richey, and John W. Hunter each one share. On January 27, 1908, in pursuance to due notice, the annual meeting of the stockholders of the Standard Company was held and adjourned to meet on January 30th following. At the meeting on January 27th, or in the interim preceding the meeting on January 30th, the financial affairs of the company were discussed by the stockholders, except Bingham, and after canvassing the situation Bell and Zoller, or Bell, acting for himself and Zoller, proposed that they would extend financial aid to the company to the extent of $50,000 upon two conditions: first, that they should be given a mortgage by the company on all its property to secure such loan, and second, that they should be given control of the board of directors of the company to be elected at the adjourned annual meeting on January 30th. These conditions were informally agreed to by all the stockholders, except Bingham, who had no knowledge of the proposed plan. At the adjourned meeting on January 30th, which was attended by all the stockholders, except Bingham, the following resolution was unanimously adopted:

"Resolved, that for the purpose of procuring additional money to be acquired for the uses and purposes

of the company, and for the making of improvements, betterments and extensions, and for funding indebtedness of the company, and for other corporate purposes, the board of directors of the Standard Washed Coal Company be, and it hereby is, authorized and directed to cause to be executed, issued and delivered. for and in behalf of said company, the general mortgage six per cent. gold bonds of said company to an amount not exceeding in the aggregate $50,000, to be dated February 10, 1908, to bear interest from date at the rate of six per centum to mature in series at such time as the board of directors shall determine, both principal and interest to be payable in gold coin of the United States of the present standard weight and fineness at such place as the directors may determine. Such bonds shall contain a provision that they may be redeemed by the company on the date of any interest payment by the payment of the face value and accrued interest with a premium of five per cent. of the par value thereof, upon notice to be given as the board of directors may require.

"BE IT FURTHER RESOLVED, that the board of directors be, and they are hereby authorized and directed, in order to secure the payment of the said bonds, to cause to be executed, issued and delivered to Chicago Title and Trust Company, of Chicago, as Trustee, a mortgage or deed of trust upon all of the property, rights, privileges and franchises of the company now owned or hereafter to be acquired, including its rights to be a corporation, such mortgage or deed of trust to contain such provisions as may be deemed proper by the board of directors."

At the time said resolution was adopted it was definitely understood by the stockholders that Bell and Zoller would personally take the entire issue of bonds thereby authorized.

The stockholders then also elected a board of directors consisting of seven members to hold office for the term of one year. The directors so elected were Walter G. Zoller, W. T. Delihant, Edward W. McCulloch, M. C. O'Donnell, John W. Hunter, Wm. W. Richey and

Ransom D. Rundell, the three last named being employees of the Bell & Zoller Coal Company, to each of whom one share of stock had been given to qualify them to act as directors of the Standard Company. Thus by the election of Zoller, Hunter, Richey and Rundell as four of the seven directors, Bell and Zoller were given control of the corporation. At a special meeting of the newly elected directors, held February 10, 1908, a resolution was adopted which provided that for the purpose of procuring additional money to be acquired for the uses and purposes of the company, and for the making of improvements, betterments and extensions, and for funding indebtedness and for other corporate purposes, the president and secretary of the company be authorized and directed to execute, issue and deliver the general mortgage 6% gold bonds of said company to the amount of $50,000, said bonds to be dated February 10, 1908, and to become due and payable $4,000 in August and $6,000 in February of each year beginning August, 1908. Said resolution also authorized the execution of a trust deed or mortgage to the Chicago Title and Trust Co., conveying all the property of the company to secure the payment of said bonds, and further provided that the said trust deed or mortgage, a copy of which was filed with the secretary of the company, and which was prepared for the resolution, be ratified, approved and confirmed. On the same day, February 10, 1908, bonds amounting to $50,000 were issued by the Standard Company, and a trust deed securing said bonds was executed in pursuance to said resolution. Said bonds and said trust deed provided that in case of default in the payment by the company of the principal and interest, the whole sum should become due and payable at the option of the holder or holders of the bonds. The resolution presented to the board of directors on February 10, 1908, and the form of the bonds and trust deed, copies of which were embodied in said resolution, were dictated by Bell, and said bonds and trust deed were pre-

pared by an attorney employed by Bell. McCulloch and O'Donnell protested to Bell and Zoller against the propriety of the terms of payment imposed by the resolution and by the bonds and trust deed upon the ground that the other obligations of the company would preclude the possibility of its meeting the obligation imposed by the bonds and trust deed to pay $10,000 each year for 5 years, together with the semi-annual interest, and were assured by Bell and Zoller that the bonds would be held by them personally, and if the company was unable to make the payments, they would take no advantage of the situation. Upon the issuance and delivery by the company of the bonds and trust deed to Bell and Zoller on February 24, 1908, they each gave to the treasurer of the company their individual check for $22,000 and their joint note for $6,000. The note was given to enable Bell and Zoller to apply $6,000 to the payment of the last instalment of a prior encumbrance upon the property of the company. This they subsequently did, or caused to be done, and their note was canceled and returned to them. Out of the $44,000 in cash realized by the company upon the checks of Bell and Zoller, the Standard Company on the same day paid to the Bell & Zeller Coal Company $27,849.39. The remainder of the proceeds of the bond issue was applied as follows: $360 for interest due on the last instalment of $6,000 of a prior encumbrance; $4,000 on a prior bond issue of $20,000; $3,000 for interest on unsecured notes; $5,000 due the Continental National Bank, and $1,500 to Bell and Zoller for the semi-annual payment of interest upon the $50,000 issue of bonds; leaving $2,290.61 to be otherwise applied. The unsecured debts of the company then approximated $90,000. The net loss of the company in the conduct of its business for the year 1908 was $12,725.25. The company was unable to pay the bonds maturing August 10, 1908. In December, 1908, or early in January, 1909, Zoller and the three employees of the Bell & Zoller Coal Com-

pany resigned as directors of the Standard Company, and one of the reasons assigned by Zoller for such action was that the Standard Company did not then owe the Bell & Zoller Coal Company any money. It further appears that Bell is now the owner and holder of the entire issue of said bonds of the Standard Company, and that on April 15, 1909, suit was instituted at his instance in the Circuit Court of Sangamon County, Illinois, to foreclose said trust deed.

On July 20, 1908, James A. Bingham filed his amended bill in equity in the Superior Court, wherein, after alleging the facts above stated so far as the same had then transpired, he charged that the object and design of Bell and Zoller in so procuring said bonds and trust deed to be issued was to take advantage of the financial embarrassment of the Standard Company, and to secure a preference to the Bell & Zoller Coal Company over other creditors, and to obtain a mortgage lien on all the property of the Standard Company and by means of a foreclosure and sale thereunder to obtain ownership and possession of said property for the use and benefit of the Bell & Zoller Coal Company; that said proceedings were instituted and carried on for the purpose of wrecking the Standard Company and procuring all its property, assets and business at a fraction of their value to the prejudice, injury and loss of the creditors and stockholders of said Standard Company; that all of said proceedings and the acts of the board of directors of said Standard Company were unlawful, fraudulent, and invalid and were unknown to and were not acquiesced in, ratified or approved by him. The bill prays that said trust deed be set aside and declared null and void; that the said bonds in the hands of Bell and Zoller, or either of them, be canceled; that a receiver be appointed for said Standard Company to take charge of its business and affairs, and that complainant have such other and further relief in the premises as shall to the court seem just and equitable.

After answers and replications filed the cause was referred to the Master in Chancery to take the evidence and report the same, together with his findings and conclusions thereon. The master filed his report, wherein he found the facts substantially as heretofore recited, and recommended that a decree be entered dismissing the bill for want of equity. After overruling the objections and exceptions filed to said report of the master, the chancellor entered a decree in accordance with the said recommendation. To reverse such decree James A. Bingham, the complainant below, prosecutes this appeal.

The rule that a contract entered into between a corporation and one or more of its directors, where the corporation is not represented by a disinterested majority of the directors voting in favor of such contract, is voidable at the instance of a stockholder, whether the directors act in good faith or not, and whether the contract appears to be fair and just or not, is supported by undoubted authority and good reason.

In Higgins v. Lansingh, 154 Ill. 301, it was said:

"In Beach v. Miller, 130 Ill. 162, Roseboom v. Whittaker, 132 Ill. 81, and in Mullanphy Sav. Bank v. Schott, 135 Ill. 655, it was said by this court that so long as a corporation remains solvent, its directors may, with knowledge of its stockholders, deal with it, loan it money, take security or buy property of it, the same as a stranger may. It was further said, that during the solvency of the corporation the directors are the agents or trustees of the stockholders; and in Harts v. Brown (77 Ill. 226) it was said that a director, in so dealing, must act fairly, and be free from all fraud and oppression, and must act for the interest of the company, and impose no unfair or unreasonable terms. But it has not been held that the company or its stockholders may not avoid a contract requiring the action of the board of directors to make it, whether made in good faith or not, where so many of the directors are interested in the contract adversely to the company that the company is not represented by a

disinterested majority of the directors voting. On the contrary, it is held that the directors, without the sanction of the stockholders, have no power to contract, for the corporation, with themselves or for the benefit of themselves, and if they attempt to do so the contract may be avoided by the corporation or its stockholders not consenting, whether the contract appears to be fair and just or not.'' Citing Gilman, C. & S. R. Co. v. Kelly, 77 Ill. 426, and Chicago Hansom Cab Co. v. Yerkes, 141 Ill. 320.

What was said by the court in the Higgins case, *supra,* was approved in Klein v. Independent Brewing Ass'n, 231 Ill. 594.

Appellees suggest that in some of the cases cited the court overlooked the distinction which exists between a *loan* by a director and a *contract* with a director, but we are unable to perceive any appreciable distinction between the bonds and trust deed involved in this case and a contract by a director with the corporation.

If the rule above stated is supported by authority and reason, it cannot be questioned that a contract which is oppressive, unfair and unjust, entered into between a corporation and a director, by the votes of such director and others under his control constituting a majority of the board, may be avoided at the instance of a stockholder who has not acquiesced therein. Indeed, counsel for appellees concede the right of a dissenting stockholder to avoid such a contract, even though it relates merely to the loaning of money by a director to the corporation.

Appellees, Bell and Zoller, were the sole owners of the capital stock of the Bell & Zoller Coal Company, a competitor of the Standard Company. At a time when the Standard Company was insolvent in law, being unable to pay its debts as they fell due in the usual course of business (Atwater v. American Exch. Nat. Bank, 152 Ill. 605; Kellogg-Mackay-Cameron Co. v. Schmidt Baking Co., 101 Ill. App. 209; Martin v.

Hertz, 224 Ill. 84), Bell and Zoller offered to finance the company, provided they were given control of the board of directors. This demand was acquiesced in by the holder's of a majority of the stock of the Standard Company, and Zoller, together with three employees of the Bell & Zoller Coal Company, who were each given one share of stock of the Standard Company for the sole purpose of qualifying them to act as directors, and who were unquestionably the creatures of Bell and Zoller, were elected directors, and with Zoller constituted a majority of the board. At the meeting of the newly elected board of directors held on February 10, 1908, when the resolution fixing the terms of the loan which Bell and Zoller were to make to the Standard Company was adopted, Bell and Zoller were in complete control of the board, and dictated the action of the board in furtherance of their purposes and schemes. As in Adams v. Burke, 201 Ill. 395, the three employees of the Bell & Zoller Coal Company "were used merely as pegs to fill the required places." The Standard Company was then and had been for more than a year doing business at a loss, and was unable to meet its current obligations. It was a time of unusual depression in the line of business in which the company was engaged. Notwithstanding the existing situation, the resolution then adopted by the directors provided for the payment of the principal of the loan of $50,000 in semi-annual instalments of $4,000 and $6,000. In view of the financial condition of the company the terms of the loan were not merely oppressive, they were impossible of performance. Upon this branch of the case the findings of the master are not without significance. They are as follows:

"No doubt Bell and Zoller knew that in all probability the company would not be able to pay the first instalments of the bonds as they came due, unless perhaps by letting other creditors wait."

"Delihant, O'Donnell and McCulloch, three of the di-

rectors, and being themselves the owners of more than one-half of the stock of the company, tried to get from Bell and Zoller better terms as to the maturity of the bonds and being unable to do so, all voted for the resolution at the directors' meeting. They apparently made the best bargain they could. It may be that Bell and Zoller made hard terms, but I am not convinced that they were seeking to wreck the company, or had a fraudulent purpose towards the company and its stockholders.''

While the evidence does not disclose an express agreement, whereby, in consideration of making the loan, the unsecured claim of the Bell & Zoller Coal Company, amounting to $27,849.39, was to be immediately paid out of the proceeds of the loan, the inference is irresistible that such payment was made at the dictation of Bell and Zoller in reliance upon a well founded expectation that said claim would be so paid, and that such expectation moved them to make the loan. Furthermore, Bell and Zoller withheld from the company $6,000 for the purpose of paying off a prior mortgage encumbrance which was not then due, the payment of which was obviously made for the benefit of the trust deed that was given to secure their bonds. It also appears that $4,000 realized from the loan was applied in payment of a prior bond issue of $20,000, which application it may not be unreasonably presumed was made at their direction. While there is no evidence to show that Bell and Zoller openly threatened to wreck the Standard Company, it is manifest that the transactions involved were so manipulated by them that no other result could reasonably be expected, and that they must have foreseen such result. With their unsecured claim against the Standard Company amounting to more than one-half of the entire loan, fully paid, and the application of $10,000 of the proceeds of such loan to the satisfaction of prior encumbrances, the trust deed securing such loan placed them in a position where loss was impossible and the

elimination of the Standard Company inevitable. The transaction was not only consummated by unlawful means employed by Bell and Zoller, but was characterized by bad faith on their part, and was unjust and unfair to the Standard Company and to appellant as a stockholder.

It is insisted by appellees that appellant is not entitled to a decree setting aside the bonds and trust deed here involved, because he has not offered to refund the money paid for the bonds or otherwise to place the parties in *statu quo,* and the well established rule that a party who seeks by a bill in equity to rescind a contract of sale for fraud on the part of the purchaser must, as a condition precedent, offer to repay the purchase price or to place the purchaser in *statu quo* is invoked in support of such insistence. This rule is not applicable to the facts in this case, nor is it properly invoked by appellees to preclude such relief as appellant may be entitled to, and a court of equity may administer. Appellant received nothing from the holder or holders of the bonds and trust deed in question, and is bound to return nothing. It is within the province of a court of equity by its decree to place Bell and Zoller in *statu quo* as near as may be. The wrong complained of was that of Bell and Zoller acting for the corporation, and restitution, if any is required, should be made by the corporation.

After the bill was filed in this case all of the stockholders of the Standard Company, except appellant, signed an instrument ratifying and consenting to the acts of the board of directors of the Standard Company in adopting the resolution authorizing the issue of the bonds and the making of the trust deed in question, and the acts of the officers of the company in issuing and executing said bonds and trust deed, and also declaring that said trust deed was intended to and does secure the payment of said bonds and is a lien on all the property of the company, subject to the lien of a prior mortgagor to secure the payment of

certain bonds then amounting to $18,500, and directing the officers and directors of the company to employ counsel to defend this suit. It is insisted that this instrument constitutes a ratification by the corporation, acting through a majority of its stockholders, of the conduct of the directors in causing the bonds and trust deed in question to be issued and executed, and is operative to validate the same. Where the directors of a corporation enter into a contract with the corporation, which contract is voidable at the instance of an innocent stockholder, and it is made to appear that the conduct of the directors in negotiating such contract was actuated by fraudulent motives and the contract is unfair, unjust and oppressive, a ratification of such contract by a majority of the stockholders will not preclude a court of equity from setting aside the same at the instance of an innocent minority stockholder. Chicago Hansom Cab Co. v. Yerkes, 141 Ill. 320; Higgins v. Lansingh, 154 Ill. 301; Bixler v. Summerfield, 195 Ill. 147; Klein v. Independent Brewing Ass'n, 231 Ill. 594.

The decree will be reversed and the cause remanded to the Superior Court with directions to that court to enter a decree declaring said bonds and deed of trust to be null and void and setting the same aside, and that Bell and Zoller be subrogated to all the rights of the several creditors of the Standard Company, to whom the proceeds of said bonds were paid, and in the event that the principal of the debts of said Standard Company so paid out of the proceeds of said bonds does not amount to $48,500, being $50,000 less $1,500 improperly paid for interest on said bonds, that said Bell and Zoller have a claim against said company for the amount of the deficiency, if any.

*Decree reversed and remanded with directions.*