**WRIGHT et al. v. McLAURY et al.**

No. 5360.

Circuit Court of Appeals, Seventh Circuit.
Jan. 16, 1936.

Rehearing Denied Feb. 26, 1936.

Robert L. Wright, of Chicago, Ill., for appellants.

Frank W. Swett, of Chicago, Ill., for appellees.

Before EVANS, SPARKS, and AL-SCHULER, Circuit Judges.

ALSCHULER, Circuit Judge.

The decree here attacked dismissed for want of equity appellants' bill of complaint. The bill sought to require the individual appellees to refund to the corporate appellee, John Lloyd Wright, Inc., certain payments alleged to have been unlawfully made by the corporation to appellees James B. Forbes and the McLaurys.

It appears that of the 1,000 shares of the company's stock, Walker McLaury owned 695, Forbes 80, and Mary McLaury 7, a total of 782 shares; and that appellants owned 204 shares—Wright 202, and Baxter 2.

The board of directors consisted of three members, and on January 1, 1928, and ever since, was composed of the two McLaurys and Forbes, Walker McLaury being president and Forbes vice president, secretary, and treasurer. At a directors' meeting held in September, 1928, attended by Directors Walker McLaury and Forbes only, it was voted to pay Forbes, out of the corporate treasury, a bonus of 10 per cent. of the net corporate profits for the years 1928 and 1929, with an additional 2½ per cent. of the net profits over $10,000; and 2½ per cent on the net profits over $15,-000, and 5 per cent. on all net profits over $25,000. In pursuance of this vote Forbes was paid a bonus for 1928 of $2,533.44, and for 1929 $900.

At each of two directors' meetings, one held in March, 1931, and the other in March, 1932, the three directors being present at both, it was voted by the board to increase Forbes' annual salary of $3,600 to $4,200, and Walker McLaury's salary from $300 to $600, and to continue payment of the bonus to Forbes at the percentages as fixed by the board for the years 1928 and 1929. In pursuance of this action there was paid to Forbes, for the two years, salary increases of $1,200 and bonuses $1,170, and to Walker McLaury, as salary increase, $600.

Between 1928 and 1932 the McLaurys and Forbes advanced or loaned to the corporation large sums of money to enable it to carry on its business, such advances at certain times of the year running as high as $80,000; and during that period they received from the corporation interest on these advances at the rate of 7 per cent. per annum, amounting in the five years to about $14,000; and such advances were represented either by trade acceptances, made in the course of the business, or by notes of the corporation.

Appellants contend that such bonus payments as were voted at meetings of the board of directors where there were present only two of its members, of whom Forbes was one, are absolutely unlawful and must be returned, with interest, to the corporation.

It is not questioned that the advances were all made as claimed, but it is insisted that there was no action of the board of directors authorizing such advances to be made or interest to be paid, and that such interest payments were unlawful and should be refunded by the directors to whom paid.

It is contended that the salary increases are void because Forbes and Walker McLaury, being both interested in the proposition, could not be counted to make up a quorum of the board, and that for want of a lawful quorum the increases were not lawfully adopted.

As to the bonus payments, appellees maintain they were not what is ordinarily understood by the term bonus, but in fact represented compensation to Forbes for very considerable work he did for the corporation outside of and beyond the duties for which he was employed and for which his salary had been fixed; and that such services were fully worth the amount that was so voted to him. There was substantial evidence tending to establish this contention, and the court made a finding of fact to that effect.

It seems that in the years when Wright was its majority stockholder and president, and when the company's business was much smaller than during the years in question, Wright had fixed bonus payments for himself. It also appears that Forbes, before entering this employment, had long held a responsible position in a large concern at a yearly compensation averaging over $5,000, and that he took this place upon the representation that with the increase of the business his earnings would be considerably enhanced; that from the time he took the new position Forbes rendered much valuable service to the corporation, and in 1931 he assumed, in addition, the duty of pushing sales in the Chicago area, performing this duty without expense to the company, whereas prior thereto a sales person had been paid on such sales 10 per cent. commission, which was stated to have been several thousand dollars annually.

The evidence also discloses that during the last two years of Wright's participation in the management (1923 and 1924) the aggregate for officers' salaries and bonuses for each year was $5,220 and $6,005 respectively, which is larger than the average for the years in question, notwithstanding the far larger business in the latter period.

There is the further situation that in each of the years 1931 and 1932 it was voted by the full board to continue the bonus to Forbes, the resolutions therefor in each case specially referring to the action of the board thereon in each of the prior years. This was ratification by the full board of the bonuses that had been previously voted by only two of the members.

■ Directors may ratify at a legal meeting acts authorized by them, or some of them, at an illegal meeting or under circumstances which would render the original authorization invalid. County Court of Taylor County v. Baltimore & O. R. Co. (C.C.) 35 F. 161; United States v. Interstate R. Co. (D.C.) 14 F.(2d) 328; 4 Fletcher, Cyclo. Corporations (1918) § 2188. And it is well established that a director or officer may be paid for services outside his ordinary duties where there is an understanding that they are to be paid for; nor is a formal vote or resolution of the board of directors necessary. Vaught v. Charleston Nat. Bk. (C.C.A.) 62 F.(2d) 817; Church v. Harnit (C.C.A.) 35 F.(2d) 499; Tietsort v. Irwin (C.C.A.) 9 F.(2d)

65; National Loan & Investment Co. v. Rockland Co. (C.C.A.) 94 F. 335; 4 Fletcher, Cyclo. Corporations (1918) §§ 2739, 2741, 2754.

■ Respecting the salary increases, it is sufficient to say that these were voted by the full board membership, which would prima facie justify the conclusion of the propriety of the increases; but in the absence of any claim of fraud or evidence thereof, or of impropriety or bad faith in the increases, we surely would not be justified in disturbing the court's dismissal for want of equity as to that phase of the action.

Respecting the interest paid to these directors for their advances to the corporation, there is no contention or evidence that the loans were not made or money advanced on trade acceptances or corporate notes. The corporation was engaged in making and selling certain toys, which they widely advertised, and at certain seasons of the year much capital was required to acquire the necessary stock in trade and push the sales. There is evidence to the effect that the financial standing of the corporation was such that these large sums could not well be obtained from banks, and that to raise them it was deemed necessary to resort to these two directors, who evidently had faith in the business and could themselves command the capital to carry it on.

It is suggested that the interest rate of 7 per cent. was high, but there was abundance of evidence that such concerns frequently paid a great deal more by way of discounts and other devices to raise money for carrying on such a business, and that the interest paid was not excessive.

■ It appears in the evidence that one of the by-laws of the corporation, adopted while Wright was the majority stockholder and president, provided that the president and the treasurer might borrow money for the company and issue corporate obligations therefor; which of itself seems to have been sufficient authority for the making of the advances or loans and for paying interest thereon.

■ That these loans were made by, and interest was paid to, directors of the corporation does not render them void, nor even voidable, in the absence of fraud or circumstances indicating detriment to the corporation. Twin-Lick Oil Co. v. Marbury, 91 U.S. 587, 23 L.Ed. 328; Scott v.

Norton Hardware Co. (C.C.A.) 54 F.(2d) 1047; Johnson v. King-Richardson Co. (D. C.) 28 F.(2d) 192; Geisenberger & Friedler v. Robert York & Co. (C.C.A.) 262 F. 739; In re Lake Chelan Land Co. (C.C.A.) 257 F. 497, 5 A.L.R. 557; 4 Fletcher, Cyclo. Corporations (1918), § 2368. The authorities cited by appellants do not support a contrary view under the circumstances here, for the Illinois courts, in Higgins v. Lansingh, 154 Ill. 301, 40 N.E. 362, and Bingham v. Bell & Zoller Coal Co., 175 Ill. App. 469, found the contracts considered therein harsh and inequitable.

While these practices as complained of had been going on for some years without objection by anybody, it seems from the evidence that the first time any impropriety therein was asserted was after appellant Wright had stated to appellees that he was himself about to enter into the toy business, and requested that they change the name of the corporation so that he might use his own name in connection with the business he was about to start. Upon denial of the request, the suit was begun.

Appellants contend that the certificate of evidence was improperly incorporated in the transcript. At the time appellants filed their præcipe for a transcript, the certificate of evidence had not yet been prepared and signed, and it was the evident intent of appellants to proceed without it, relying only on the court's findings of fact which appeared from the record. Thereupon appellees presented an additional præcipe, including therein the certificate of evidence which had been certified by the district judge and filed in that court and on motion of appellees was incorporated in the transcript.

Appellants maintain that the certificate of evidence is not properly before us and should not be considered. In this we do not agree. While it is proper under the rules, and commendable as well, to eliminate from transcripts as much of the proceedings in the District Court as properly may be omitted, we believe it was here proper and necessary to consider the evidence given, as shedding light upon the facts whereon the court's findings and conclusions were predicated. While the court's findings of fact should be, and usually are, very helpful in the consideration of an appeal, yet there may appear, and this very discussion will so indicate, that at times there are facts disclosed by the certificate of evidence which, though not the subject of specific findings by the court, are material and necessary upon review. As declared in United States v. American Ry. Exp. Co., 265 U.S. 425, at page 435, 44 S.Ct. 560, 564, 68 L.Ed. 1087: "It is true that a party who does not appeal from a final decree of the trial court cannot be heard in opposition thereto when the case is brought here by the appeal of the adverse party. In other words, the appellee may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary, whether what he seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below. But it is likewise settled that the appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it." To same effect are Elliott v. Gordon (C.C.A.) 70 F.(2d) 9; Laursen v. Lowe (C.C.A.) 46 F.(2d) 303; Hyman v. Trow Directory Co. (C.C.A.) 261 F. 991.

We believe it was proper to bring the certificate of evidence to this court, and appellants' motion to strike it is denied.

The decree of the District Court is affirmed. Costs, including those incurred in preparation and printing of the transcript of evidence, are adjudged against appellants.