Statement.

## Staunton.

CITY OF CHARLOTTESVILLE v. SOUTHERN RAILWAY CO. AND
ANOTHER.

SEPTEMBER 21, 1899.

1. RAILROADS—*Public Crossings—How to be Constructed.*—A railroad
   company may, under Acts 1874-'5, p. 47, construct its road across
   a public highway, but it must do so with as little injury to the
   highway as is practically possible. It must so restore the highway
   that its use by the public will not be materially, or at least un-
   necessarily, interfered with, and so as not to render it less safe
   and convenient for the passage or transportation of persons or
   property along the same, except so far as diminished safety and
   convenience are inseparable from its use by the railroad.
2. R A I L R O A D S—*Public Crossing—Construction and Maintenance—
   Continuing Duty—Case in Judgment.*—The duty of a railroad
   company, in respect to a highway which it crosses, is a con-
   tinuing one. If the population of the neighborhood, or the use of
   the highway, so increases that the crossing, originally adequate,
   is no longer so, it is the duty of the railroad company to make
   such alteration in the crossing as the changed conditions require.
   There is nothing in the case in judgment to take it out of the
   general rule. The highway, whether under the control of the
   county of Albemarle or the city of Charlottesville, is the property
   of the State, held in trust for the benefit of the public. The rights
   of the public have not been waived or released, nor is it in any way
   estopped from asserting them.

Appeal from a decree of the Corporation Court of the city of
Charlottesville, pronounced October 22, 1898, in a suit in chan-
cery, wherein the appellant was the complainant, and the
appellees were the defendants.

*Reversed.*

The object of this suit was to enjoin the appellees from continuing an encroachment upon a street of the appellant, and to compel them to widen the approach to an overhead bridge built by them, and also to widen the bridge to conform to the original width of the street as established by law before such encroachment.

*George Perkins*, for the appellant.

*Blackford, Horsley & Blackford*, for the appellees.

BUCHANAN, J., delivered the opinion of the court.

The litigation in this case grows out of the construction of a railroad across a public highway about the year 1880. The terms and conditions upon which such a crossing could then be made are found in sec. 25 of ch. 56 of the Code of 1873, as amended by act of February 2, 1875 (Acts 1874-'5, p. 47). That section provided that if any railroad, turnpike, or canal company deemed it necessary, in the construction of its work, to cross any other railroad, turnpike, or canal, or any State or county road, it might do so, " provided its work be so constructed as not to impair the safety or impede or endanger the operations of the work to be crossed; and that such crossing be otherwise effected by such permanent and proper structures and fixtures as will best make safe life and property passing upon the same, and shall be satisfactory to the company whose work is to be crossed."

To construe the statute literally would defeat the very object which the Legislature had in view in passing it, for, in the very nature of things, it is impossible to construct a railroad across a highway without to some extent impairing its safety or impeding or endangering the passage or transportation of persons or property along the same. The statute must, therefore, receive a reasonable construction, such an one as would enable the railroad company to exercise the power conferred; but it must at

the same time be so construed as not to deprive the public of their rights in the highway to any greater extent than is necessarily implied from the power granted. The true meaning of the statute is, we think, that a railroad company may construct its road across a public highway, but it must do so with as little injury to the highway as is practically possible. It must so restore the highway that its use by the public will not be materially, or at least unnecessarily, interfered with, and so as not to render it less safe and convenient for the passage or transportation of persons or property along the same, except so far as diminished safety and convenience are inseparable from its use by the railroad. 2 Wood's Railway Law, 977-8; 3 Elliott on Railroads, sec. 1105; Pierce on Railroads, 245; 2 Shearman & Redfield on Neg., sec. 415; *State* v. *St. Paul, &c. Ry. Co.,* 59 Am. Rep. 313; *Railroad* v. *Coms.,* 31 Ohio 339; *Roberts* v. *C. & N. Railroad,* 35 Wis. 679; *Jones* v. *Erie, &c. R.* (Penn.), 32 At. Rep. 535; *Evansville, &c. R. Co.* v. *Carvener,* 32 Am. & Eng. R. R. Cases 134.

In the view we take of this case it is unnecessary to decide whether or not the original crossing was constructed in accordance with the provisions of that statute. If it had been, it does not follow that the crossing is now such an one as the law requires. The duty of a railroad company in such a case is a continuing one. It does not fulfil its whole obligation by putting the highway in such a condition at the time the railroad is built that the crossing does not impair the safety, or impede or endanger the passage or transportation of persons or property along the highway, nor by putting and keeping it in such a condition as would have accomplished that end if the conditions and circumstances, existing at the time the railroad was built, had continued. The Legislature intended to provide for all time against any obstruction which would impair the safety, or impede or endanger the passage or transportation of persons or property along the highway beyond what is authorized by the statute. If the population

of the neighborhood or the use of the highway so increase that the crossing, originally adequate, is no longer so, it will be the duty of the railroad company to make such alteration in the crossing as the changed conditions require.    To construe the statute otherwise might, and often would, result in seriously impairing the rights of the public in the highway, and such a construction will not be given a statute in derogation of common right, unless plainly expressed or necessarily implied.    The doctrine that the duty of the railroad company is a continuing one is fully sustained by the authorities.    *Cook* v. *Boston, &c. R. Co.*, 133 Mass. 185; 10 Am. & Eng. R. R. Cases 328; *State* v. *St. Paul, &c. R. Co.*, 59 Am. Rep. 313; Elliot on Railroads & Streets 599, &c.; 2 Wood's Railway Law 979.

The contention of the appellees that the crossing was originally constructed in a manner satisfactory to the county, and that this estops the city, which claims under or through the county, from obtaining the relief sought in this case, even if the crossing be not such an one as the statute requires, cannot be sustained.    Even if it could be held, as it cannot, that the word "company," as used in the statute, embraced a county or city, the record does not show that the crossing was constructed in a manner satisfactory to the county.

The action of Major Peyton in agreeing to the construction of the crossing as it was constructed, was not, so far as the record shows, reported to or approved by the county authorities.    The highway, whether under the control of the county or city, is the property of the State, held in trust for the benefit of the public, and the right of the public to require the railroad company and its successors, the appellees, to place and keep the crossing in such condition as the statute requires has not been affected by anything the county or city has done, or has failed to do.

The next question is whether or not the railroad crossing complained of is such an one as the law requires, under existing circumstances.

About the year 1880, the Charlottesville & Rapidan Railroad Company constructed its road from Charlottesville to Orange Courthouse, and, in doing so, crossed the public road between the town of Charlottesville and the University of Virginia. The crossing not being at grade, the railroad company made a cut across the highway, and spanned the cut with an overhead bridge. The height of the bridge being greater than the depth of the cut, it became necessary to raise the grade of the highway on either side of the bridge. This was done by making a fill in the highway for about three hundred yards. The highway is sixty feet wide. The bridge over the railway is about forty-eight feet wide, and the fill varies in width from forty-seven to fifty-four feet. Since the crossing was made, the corporate limits of the town of Charlottesville have been extended beyond the crossing, and the highway at that point, which was then a public road in the county, has now become a part of the main street of the city of Charlottesville. An electric street car line runs on this street, and its track is laid south of the centre of the street for the purpose, it is said, of making room for wagons and other vehicles to pass between it and the sidewalk on the north side of the street. Where the street is sixty feet wide, as it is in most places, there is ample room between the street car track and the southern limit of the street for a sidewalk; but it is shown that there is not sufficient room for a sidewalk upon the bridge and fill south of the street car track.

It further appears, by a preponderance of evidence, that the convenience of the public would be greatly promoted by the continuation of the sidewalk or pavement from Delevan church along the street where the fill and bridge are located. The record shows that this is the most important street in the city, and much travelled at the point where it is crossed by the railroad. By actual count, made at the instance of, and at a time selected by, the appellees, it was ascertained that there passed over the bridge for three successive days, between the hours of

seven in the morning and seven in the evening, an average per day of more than three thousand pedestrians, and over five hundred vehicles. Upon this state of facts it cannot be said that the railroad crossing, which includes the fill upon the street by the railroad company, is in such condition as the statute requires. The people, of the city of Charlottesville and the public have the right to the free and uninterrupted use of the whole street where the railroad crossing is located, as well as elsewhere, except so far as the construction of the crossing necessarily interferes with that use. There is nothing to prevent the railroad company from making the crossing as wide as the street. It is necessary for the convenience of the public. The fact that it will cost a few thousand dollars to widen the crossing is no sufficient reason why it should not be done.

We are of opinion, therefore, to reverse the decree complained of, and to remand the cause to the Hustings Court of the city of Charlottesville, to be there proceeded with in accordance with the views expressed in this opinion.

*Reversed.*