IN THE MATTER OF THE PETITION OF THE COUNTY OF BERGEN FOR AN ORDER COMPELLING THE NEW YORK, SUSQUEHANNA AND WESTERN RAILROAD COMPANY TO REPAIR AND IMPROVE THE BRIDGE ON RIVER ROAD, OVER ITS TRACKS, IN THE BOROUGH OF EDGEWATER, BERGEN COUNTY, STATE OF NEW JERSEY.

NEW YORK, SUSQUEHANNA AND WESTERN RAILROAD COMPANY, APPELLANT, v. COUNTY OF BERGEN AND BOARD OF PUBLIC UTILITY COMMISSIONERS, RESPONDENTS.

Argued November 24, 1959—Decided December 21, 1959.

256

Mr. *Leon Leighton*, of the New York Bar, argued the cause for appellant (*Messrs. Lum, Fairlie & Foster*, by *Mr. Raymond W. Troy*, a partner, attorneys).

Mr. *Milton T. Lasher* argued the cause for respondent, County of Bergen.

Mr. *David M. Satz, Jr.*, Deputy Attorney General, argued the cause for respondent, Board of Public Utility Commissioners (*Mr. David D. Furman*, Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

FRANCIS, J. On application of the County of Bergen, the Board of Public Utility Commissioners ordered the appellant, New York, Susquehanna and Western Railroad Com-

pany, to reconstruct or replace its bridge which carries River Road over the railroad tracks in the Borough of Edgewater. The appeal to the Appellate Division was certified by this court before argument there.

River Road is a county road which runs through Edgewater from its northerly boundary at Fort Lee Borough to the Bergen-Hudson County line. For the purpose of avoiding a grade crossing and of creating an overpass for River Road, the bridge involved was constructed in 1894. It was reconstructed in 1917. In both instances, the railroad assumed the expense.

The bridge consists of three main steel trusses which carry a floor system of timber beams running crosswise on them. A series of longitudinal stringers are superimposed on the floor beams, running in the direction of the trusses. On top of the stringers is a timber deck with a wooden plank roadway 30 feet wide. There is an eight-foot wooden plank sidewalk on one side of the roadway. Signs are posted indicating a gross load capacity per vehicle of 12 tons. Substantial testimony was offered to establish that the signs fairly represent the capacity. The Board made no finding to the contrary. But the railroad concedes that 12 tons constitute the maximum vehicle and load capacity. The County conceded, however, that a number of county-constructed bridges over county roads are limited to and posted for from 10 to 15 tons.

There are a number of industrial plants in Edgewater, and particularly in the River Road area. South of the bridge are three divisions of Allied Chemical Corporation (Gypsum Board, Plastics & Chemicals, and Barrett), Ford Motor Co., Central Freight Trucking Company, Lever Brothers, and Spencer Kellogg & Sons. To the north are Hill Bros. Coffee, Inc., Edgewater Oil Terminal, Aluminum Company of America, and Central Freight Trucking Corporation. Principal arteries of truck transportation between Edgewater and outside areas are: to New York and points east: Lincoln Tunnel (south of the bridge) and George

Washington Bridge (north of the bridge); to points south: New Jersey Turnpike and U. S. Routes 1 and 9; to the west: State Highways 4 and 46 (north of the bridge); to the north: State Highway 17 to the New York Thruway. River Road is not the only public thoroughfare leading from the vicinity of these industries to the main arteries. Susquehanna offered uncontradicted testimony showing the effect of using an alternate route to reach them. A light truck was driven from the Lever Brothers (south of the River Road bridge) to the George Washington Bridge. The trip, using River Road, is 5.1 miles and the travel time at a reasonable speed was 14 minutes. Using another road and avoiding the River Road bridge, the distance is four miles and required 12 minutes. The same operation was undertaken from the Hill Bros. location (north of the bridge) to the Lincoln Tunnel. Use of River Road and its bridge required 25 minutes and the distance is 5.3 miles. The alternate route covers 8.5 miles and took 28 minutes. Ordinary travel conditions are said to explain the relative difference in time when the latter course is taken. Since all of the plants referred to north and south of the bridge are fairly close together, the suggestion is that the differences in time and distance in using available alternate routes would be comparable.

 A survey of traffic conditions on River Road (made in cloudy, rainy weather) indicated that between 8 A. M. and 6 P. M. the bridge was traversed by 2,966 vehicles, i. e., 2,254 automobiles, 618 trucks, and 78 ordinary common carrier type buses. Of course, each of these vehicles with its load weighed no more than 12 tons.

*R. S.* 48:12–49 provides:

"* * * Every railroad company * * * shall construct and keep in repair good and sufficient bridges and passages over, under and across the railroad * * * where any road * * * shall cross the same, *so that public travel on the road is not impeded thereby.* Said bridges and passages shall be of such width and character as shall be suitable to the locality in which they are situated." (Emphasis added)

There is no doubt that Susquehanna is subject to this statute. It matters not when the carrier was incorporated nor when the bridge was constructed; the obligation imposed is a continuing one. *Newark v. Delaware, Lackawanna and Western R. R. Co.*, 42 *N. J. Eq.* 196 (*Ch.* 1886); *Newark v. Erie Railroad Co.*, 72 *N. J. Eq.* 447 (*Ch.* 1907); *Erie R. R. Co. v. Board of Public Utility Commissioners*, 107 *N. J. L.* 409 (*Sup. Ct.* 1931), affirmed 109 *N. J. L.* 264 (*E. & A.* 1932). Thus, the burden of the railroad is to maintain the structure in such a state of width and character as not to impede public travel on the highway and so that it is suitable to the locality where located. *Borough of Sayreville v. Pennsylvania R. R. Co.*, 26 *N. J.* 197 (1958), appeal dismissed 358 *U. S.* 44, 79 *S. Ct.* 43, 3 *L. Ed. 2d* 45 (1958).

Bergen County, undoubtedly aware that the Motor Vehicle Act authorizes trucks up to 30 tons of vehicle and load to be operated on the highways of this State, *N. J. S. A.* 39:3–84, and probably motivated primarily by the existence of the large industrial plants in Edgewater, filed the complaint herein to require Susquehanna to increase the load-bearing maximum of this River Road bridge. The relief sought was an order directing "the necessary repairs and improvements * * * so that the condition thereof will be safe and convenient for public use and travel, and for all vehicles lawfully entitled to use the same." No request was made in the complaint that the capacity be increased to any specific point between 12 tons and the 30-ton maximum permissible roadway limit. Nor is the directive of the Board of Public Utility Commissioners any more precise. Its mandate is to reconstruct or replace the bridge "in order to adequately carry modern highway vehicular traffic."

The brief of the County makes it plain, however, that its intent in applying to force such reconstruction is to effect an increase of the weight-bearing capacity so as to permit use of the bridge by a vehicle of the legislatively authorized maximum load for public roads. The thesis is that when a railroad builds an overpass, an absolute burden

is assumed under *R. S.* 48:12–49 to make and maintain the structure adequate to support the maximum load permitted at all times by the Motor Vehicle Act. But the obligation is not so broad. To so declare would be to denude of significance the statutory language that the bridge shall be maintained so that public travel is not "impeded" and so that it will be "suitable to the locality." The fact that in an isolated instance the driver of a 30-ton truck wished to traverse a country lane which contained a railroad overpass when other adequate roadways were available, would not justify a mandate for a new bridge. The statute is to be construed reasonably; it cannot be applied arbitrarily. *The Central R. R. Co. ads. The State,* 32 *N. J. L.* 220 (*Sup. Ct.* 1867). There must be a reasonable need for its application. See, *e. g., Borough of Sayreville v. Pennsylvania R. R. Co., supra.*

 The legislation has been in effect for over 100 years. *L.* 1847, *p.* 133. Although from its earliest days the courts have recognized the duty laid on the railroad to be a continuing one, they have declared that it must be measured by the circumstances. Even though a bridge was adequate originally to satisfy conditions existing at the time of construction, changes may be ordered as the public exigencies require. If increase in population and business produces more and heavier traffic which renders it inadequate for the current needs, the railroad's burden is to make such changes as are reasonably necessary for the public accommodation and safety. *The Central R. R. Co. ads. The State, supra; Township of Raritan v. Port Reading R. R. Co.,* 49 *N. J. Eq.* 11, 15 (*Ch.* 1891); *West Jersey & Seashore R. R. Co. v. Waterford Tp.,* 64 *N. J. Eq.* 663, 672 (*Ch.* 1903); *Newark v. Erie Railroad Co., supra,* 72 *N. J. Eq.,* at *page* 453; *N. J. Highway Authority v. Central R. Co. of N. J.,* 21 *N. J.* 157, 163–167 (1956). And see to the same effect in other jurisdictions: *City of Olean v. Pennsylvania R. Co.,* 249 *N. Y.* 364, 164 *N. E.* 251 (*Ct. App.* 1928); *City of Mt. Vernon v. New York, N. H. & H. R. Co.,*

232 *N. Y.* 309, 133 *N. E.* 900, 903 (*Cl. App.* 1922);
*People v. N. Y., N. H. & H. R. R. Co.,* 89 *N. Y.* 266 (*Ct. App.* 1882); *City of Charlottesville v. Southern Ry. Co.,* 97 *Va.* 428, 34 *S. E.* 98 (*Sup. Ct. App.* 1899). The alteration which may be called for under the statute is such as will meet the present needs of the public who have occasion to use the highway. *Briden v. New York, N. H. & H. R. Co.,* 27 *R. I.* 569, 65 *A.* 315 (*Sup. Ct.* 1906).

Aside from the type of vehicles desiring to use the bridge, in this kind of case the existence of another convenient and readily accessible route has been recognized in some areas in comparable situations as a factor to be considered. *Yowell v. Cleveland, C., C. & St. L. Ry. Co.,* 360 *Ill.* 272, 195 *N. E.* 667 (*Sup. Ct.* 1935); *Briden v. New York, N. H. & H. R. Co., supra.* In the latter case, the Supreme Court of Rhode Island said [27 *R. I.* 569, 65 *A.* 318]:

"The fact that the bridge is not of sufficient strength to bear the weight of a road roller is not, in my opinion, enough to cast upon the respondent the duty of strengthening the bridge. The bridge is, according to the statement of facts, up to the standard of safety and convenience which the statute exacts of towns and cities, and I do not think the railroad is required to provide for this unusual weight, especially in view of the fact that a bridge of sufficient strength is located but a short distance away."

And in *Yowell* where the effort was to compel the railroad to construct an additional grade crossing, the court found that the record did not sustain the order made by the Commerce Commission, saying [360 *Ill.* 272, 195 *N. E.* 669]:

"In its findings the Commerce Commission wholly failed to state any facts which would show why the respondent should construct the particular grade crossing to properly serve the public convenience and necessity. The findings made by the commission express mere conclusions not based upon any facts found by it, to the effect that, owing to the lack of crossings in the west portion of Gillespie, its residents are discommoded by being compelled to resort to a circuitous route to reach points on either side of the tracks, and that the proposed highway, when opened, will more conveniently serve them and also the community high school district. The order does not purport

to find that the general public interest requires the particular crossing. In every application of this kind the primary and controlling interest to be considered is the public interest. The convenience and necessity required to support an order of the commission are those of the public and not of the individual or a number of individuals. * * *

The petitioners argue, however, that the order discloses that the convenience and necessity of approximately half of the territory served by the community school of the city of Gillespie so affects, either actually or potentially, every family in the community, and that the convenience and necessity of students going to and from that school are of a public nature sufficient to sustain the order. The answer to this argument is that the order does not show the number of persons who would be affected or to whom advantages would accrue from the proposed crossing. Even if it be conceded that a considerable number of individuals might find it slightly more convenient if they were saved the walk of a few extra blocks to reach the existing crossing at Macoupin street or Jersey street, the concession cannot avail the petitioners, as this does not establish a case of public convenience and necessity."

█ As has been indicated, the quoted cases are not identical with that before us. The statutes involved speak in more general terms than ours, which inveighs against bridges that impede public travel and are unsuitable to the locality. And although our act is construed reasonably but liberally in favor of the public, *N. J. Highway Authority v. Central R. Co. of N. J., supra,* 21 *N. J.,* at *page* 165, elements of public use, convenience of use and need for use in the locality are proper subjects for consideration.

The proof adduced at the hearing before the Board demonstrates that the industrial plants referred to are served by trucks. Some of them were said to be large units, ranging in size from 30 to 50 feet in length. Their weight loaded or unloaded does not appear. Likewise, the record is vague as to whether they use River Road. The only pertinent testimony follows:

"Q. Well, tell us, Mr. Joseph, have you seen *any trucks* go up and down River Road or have you seen any trucks in the plants? A. Have I seen trucks?

Q. Yes. A. Yes, I have." (Emphasis added)

The subject of travel on River Road was left in that state. Moreover, so far as the testimony submitted to us shows, no person connected with any of the industries asserted either the desire or the need to pass over the bridge, or the tonnage of whatever trucks it was necessary and convenient for them to drive over it, or the inconvenience, if any, of using an alternate route.

The testimony reveals that it would cost about $5,000 to bring the strength of the trusses up to a weight-bearing load of 15 tons, $45,000 to strengthen the bridge substantially above that limit, and $60,000 to rebuild it completely so as to support 20 tons. The County Engineer opined that the cost of providing for the carriage of 30-ton vehicles would be about $60,000.

 The Board has wide discretion in dealing with problems such as the present one. Ordinarily the judiciary will not interfere with the determination made if it is supported by substantial evidence. *In re Greenville Bus Co.,* 17 *N. J.* 131, 138 (1954); *Hudson Bus Transp. Co. v. Board of Public Utility Com'rs.,* 131 *N. J. L.* 576 (*Sup. Ct.* 1944). But, as we have pointed out, the obligation to strengthen or rebuild the bridge is not an absolute one as the Board and the County seem to have felt at the hearing. It must appear that the structure provided by the railroad is no longer adequate to accommodate the needs of the public as those needs appear in the locality. Proof of a condition calling for relief and the specific nature of the relief is so lacking in this instance as to leave the directive to the railroad without legal support. This deficiency may well be chargeable to the theory pursued by the County, namely, that an absolute obligation exists to provide an overpass which, regardless of public need, will support vehicles of the maximum tonnage permitted on the highways of this State. Accordingly, in the interests of just and proper disposition, the matter must be remanded to the Board for the submission by the parties of such further evidence as they may desire in conformity with this opinion.

■ In passing, note may be taken of the railroad's position that it cannot afford to reconstruct the bridge. Although in the past that fact has been spoken of sympathetically by the courts, *Central R. R. Co. of N. J. v. Board of Pub. Utility Com'rs.*, 112 *N. J. L.* 215 (*Sup. Ct.* 1934), affirmed 114 *N. J. L.* 397 (*E. & A.* 1935), and although the Legislature has seen fit to grant some relief in certain types of railroad crossings (see *Borough of Sayreville v. Pennsylvania R. R. Co., supra*), the statute which is controlling here asserts the duty in terms which have existed since 1847. Financial difficulty presents no defense against such an obligation. *Erie Railroad Co. v. Board of Public Utility Com'rs.*, 254 *U. S.* 394, 41 *S. Ct.* 169, 65 *L. Ed.* 322 (1921).

Reversed and remanded.

*For reversal and remandment*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*For affirmance*—None.