65 N.J. Super. 530 (1961)
168 A.2d 204
IN THE MATTER OF THE PETITION OF HIGHPOINT DEVELOPMENT CORP., SEABOARD REALTY CO., INC., MOUNTAINRIDGE CORP., AND WESTOVER REALTY INC. FOR AN ORDER REQUIRING MIDDLESEX WATER COMPANY TO EXTEND ITS FACILITIES TO SERVICE PROPERTY OF THE AFORESAID CORPORATIONS.
Superior Court of New Jersey, Appellate Division.
Argued February 6, 1961.
Decided February 28, 1961.
*532 Before Judges GOLDMANN, FOLEY and HALPERN.
Mr. Burtis W. Horner argued the cause for appellant (Messrs. Stryker, Tams & Horner, attorneys).
Mr. Benedict W. Harrington argued the cause for respondents (Messrs. Kessler, Kessler & Harrington, attorneys).
The opinion of the court was delivered by HALPERN, J.S.C. (temporarily assigned).
The appellant Middlesex Water Company appeals from an order of the Board of Public Utility Commissioners dated May 11, 1960, requiring it to install extensions of its water facilities, without charge, to service four contiguous housing developments of the respondents, Highpoint Development Corp., Seaboard Realty Co., Inc., Mountainridge Corp. and Westover Realty, Inc., and to return the deposits furnished by respondents to the appellant to cover the estimated cost of such extensions.
A brief recital of the facts leading up to the hearings before the Board is necessary for a better understanding of the issues involved. The respondents are 4 of 21 New Jersey corporations, the capital stock of which is owned and controlled by two individuals who formed separate corporations to build homes on 21 tracts of land in Edison Township. Early in 1959 the respondents requested appellant to extend its water facilities to their contiguous vacant lands upon which they contemplated building a total of 61 homes. The appellant refused to do so until respondents signed contracts for such extensions and deposited the estimated cost for such installations of $15,745.45. On September 8, 1959 respondents filed their petitions with the Board, pursuant to R.S. 48:2-27, to compel appellant to extend its facilities to their lands. On September 25, 1959 respondents entered into *533 written contracts with appellant under which the requested deposits were made. The agreements provided for refunds of the deposits under a formula of three and one-half times the annual revenue received for the first year only from each consumer. If sufficient consumers are not connected by the end of ten years, the balance of the money on deposit is retained by appellant. Under the agreements the total refunds could not exceed the deposits but could be less. Simultaneously with the delivery of the contracts and deposits, the respondents sent separate letters to appellant, dated September 24, 1959, objecting to the contracts and reserving their legal rights to litigate the issues involved. Since all four letters are similar in form, an abstract from Westover's letter will serve to illustrate such reservations:
"* * * We are putting up this deposit requested in your letter of August 28, 1959 with the explicit understanding that such deposit in no way should be considered as an offer by Westover Realty, Inc. to bear the cost of such extension to service the said property. Nor is such payment to be considered as a deposit under any formula agreement.
It is specifically understood that said deposit is made without prejudice to the legal rights of Westover Realty, Inc. to litigate the right of your company to impose any or all of the cost of the extension of such water facilities on said Westover Realty, Inc., either before proper administrative boards or the courts. * * *"
Thereafter, appellant, with full knowledge of such reservations, voluntarily extended its existing facilities, which were contiguous to respondents' four tracts, to service the premises in question. While the estimated cost of the total installation was $15,745.45, the actual cost was only $15,189.86. No refund or credit for the difference was ever given, or offered, by appellant. Hearings on the petitions were held on December 3, 1959, March 4, March 9, and April 14, 1960. By March 4, 1960, about 90% of the 61 home potential in the four tracts had been constructed; 55 houses had already been built, 40 of which were then occupied and receiving service from appellant. It should be noted here that the contracts of September 25, 1959, *534 entered into between respondents and appellant, followed some, but not all, of the suggestions in the general rules and regulations governing extensions promulgated by the Board in 1923 by virtue of its authority under R.S. 48:2-25(a) and 48:2-27. (The October 1, 1960 regulations of the Board recommend a refund formula of five times the annual revenue instead of three and one-half).
The Board's 1923 rules and regulations, and the formulae contained therein, are not binding on respondents, the appellant or the Board, but are merely suggested guides for all prospective consumers and utilities. The fact that some of the recommendations have been used for many years by appellant does not change the fact that R.S. 48:2-27 clearly and definitively sets forth the power of the Board to dispose of disputes between consumers and utilities. The 1923 rules and regulations are subordinate to the statute. In re Board of Fire Comm'rs of Fire Dist. No. 3, Piscataway Tp., v. Elizabethtown Water Company, N.J., 27 N.J. 192 (1958).
The principal issues are whether the Board should have made its decision on the facts as they existed on September 8, 1959, when the petitions were filed and no homes had yet been erected, or on the facts existing on April 14, 1960, when the hearings were concluded; and whether the Board had jurisdiction to decide the issues raised in the respondents' petitions because of the agreements entered into on September 25, 1959.
The respondents having filed their petitions with the Board before signing the agreements with appellant thus invoked the jurisdiction of the Board. Having also reserved their rights to litigate the issues before the Board, or the courts, the signing of the agreements did not oust the Board of jurisdiction from determining the issues presented. Cf. Woodside Homes, Inc. v. Town of Morristown, 26 N.J. 529 (1958), wherein no formal protest or reservation was made by the developer and the court held the developer to be estopped from questioning its voluntary agreement. The appellant could have properly refused to make *535 the extensions when respondents conditionally entered the agreements of September 25, 1959, and could have waited for a formal decision of the Board on the merits of the petitions. The appellant was again advised of respondents' intent to rely upon the reservations of their legal rights when their attorneys wrote to appellant's attorneys on October 8, 1959:
 "October 8, 1959
 Stryker, Tams & Horner, Esqs.
 744 Broad Street
 Newark 2, New Jersey
 Attention: Burtis Horner, Esq.
 Re: Seaboard Realty Co., et al v. Middlesex Water Co.

Docket No. 599-11680 (Instant case)
Dear Mr. Horner:
Pursuant to our telephone conversation, this is to advise you that the money deposited on behalf of each of the petitioners in the above-entitled matter is a deposit under the formula set up in your company's tariff.
The petitioners have been advised the Middlesex Water Company has refused to proceed with the installation of the extension facilities unless this case is discontinued. I believe there must be some misunderstanding. We are willing to execute or do anything your client requests as long as such action on our part does not prejudice our right to determine the legal obligations of the respective parties to this action.
Will you please advise when the work on these extensions will begin.
 Yours very truly,
 Kessler, Kessler & Harrington
 By: Benedict W. Harrington
 Benedict W. Harrington"
The appellant having voluntarily thereafter made the installations with full knowledge of respondents' reservations of their legal rights have impliedly consented thereto, and should not now be heard to complain that the Board lacked jurisdiction. The respondents, therefore, are entitled to an adjudication of their petitions filed under R.S. 48:2-27 which provides:

*536 "48:2-27. Extension of facilities
The board may, after hearing, upon notice, by order in writing, require any public utility to establish, construct, maintain and operate any reasonable extension of its existing facilities where, in the judgment of the board, the extension is reasonable and practicable and will furnish sufficient business to justify the construction and maintenance of the same and when the financial condition of the public utility reasonably warrants the original expenditure required in making and operating the extension."
The statute is clear that the Board has the power to order appellant to extend its facilities to respondents' tracts if it finds from the evidence that (a) the extension is reasonable and practicable; (b) it will furnish sufficient business to justify its construction and maintenance; and (c) the appellant's financial condition reasonably warrants the original expenditure required in making and operating the extension.
It is not this court's function to make original factual findings and policy determinations as to whether the statutory criteria have been met. The Legislature has bestowed this function upon the Board, which applies its experienced administrative judgment to the problem involved. The Board's determination is presumed to be correct; and we will not substitute our independent judgment for that of the Board but will confine our inquiry to determine whether the evidence before the Board furnished a reasonable basis for its action. In re Greenville Bus Co., 17 N.J. 131 (1954); In re Petition of Bergen County, 31 N.J. 254 (1959).
Viewed in the light of these standards, our review of the record clearly shows that the Board's decision is amply supported by substantial evidence. In fact, the appellant does not seriously dispute the Board's determination that the statutory criteria had been proven as of the date of the completion of the hearings. It argues, however, that the Board is without power to override the agreements of September 25, 1959, or to consider the proven facts existing on April 14, 1960, in passing upon respondents' petitions.
When appellant received its franchise from the State of *537 New Jersey to sell water, it assumed the duty of rendering adequate service to the public. It was duty bound, subject to legislative regulation, to install and maintain required water facilities; and, when necessary and appropriate, to extend them to meet the inevitable growth of the community and its increased demands for water. The appellant is not required to extend its facilities unless it does so voluntarily, or when ordered by the Board. When it acts voluntarily it usually enters into a written contract with the prospective consumer; it requires a deposit to cover the estimated cost of installation; and refunds some portion, or all, of such deposit at the formula rate suggested by the Board. The Board's rules and regulations attempt not only to protect the utility's capital investment and keep it out of the real estate development business, but in instances where the agreement provides for a refund of the deposit to set up a suggested formula for such refund. It is not the purpose of the Board's regulations to permit the utility to make a profit on the extension of its facilities by doing the work at a cost less than its estimate, and keeping the difference, or to use a refund formula which would not permit recapture of the amount deposited by the consumer, although this in fact is often the result and would have happened here.
In the instant case, because of the lapse of time between the filing of the petitions and the hearings, the Board had the advantage of knowing the actual installation costs, as well as having the houses built, so that its decision as to the existence of some of the statutory criteria was based on accomplished facts, and it did not have to speculate about them. No valid reason exists, or is presented, for requiring the Board to close its eyes to the existing conditions as of the dates of its hearings, and thus to consider the case in a vacuum. See State v. New Jersey Bell Tel. Co., 30 N.J. 16 (1959). There is often some "regulatory lag" before administrative agencies, and the fact that the Board in this case ordered the appellant to do what it had already done, is a consequence which is unavoidable. The Board properly *538 considered the facts as they existed at the end of the hearings in arriving at its decision.
We have examined the defenses dealing with waiver and estoppel and find that the Board's factual determinations thereon were amply supported by the evidence, and the appellant's contentions with respect thereto to be without merit in fact or in law.
The order of the Board is affirmed.